**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MARCUS JAMEL STRAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-00812 (APM) |
| | ) | |
| UNITED STATES DEPARTMENT OF DEFENSE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Pro se Plaintiff Marcus Jamel Straker, a former federal defense contractor, brings this action against Defendants United States Department of Defense ("DoD"), Department of the Army ("Army"), and Army Colonel Troy Danderson, challenging various agency actions related to Plaintiff's DoD sponsorship termination and theater-wide debarment.  Plaintiff alleges violations of the Administrative Procedure Act (APA) and the Fifth Amendment Due Process Clause and seeks mandamus and declaratory relief.  Defendants now move to dismiss those claims.[1]  For the reasons that follow, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 32, is granted in part and denied in part.  The court grants Defendants' motion as to Plaintiff's mandamus claim but denies it as to his APA and Due Process claims.

---

[1] Defendants do not seek dismissal of Plaintiff's Freedom of Information Act (FOIA) claim, which is currently proceeding on a separate track.  *See* Order, ECF No. 20.

## II.    BACKGROUND

### A.    DoD Policies

At issue in this case are provisions from three internal DoD policies.  DoD Manual 5200.08, Volume 3 ("Defense Manual") provides that "Commanders have authority to take reasonably necessary and lawful measures to protect installation property and personnel, but that authority must not be exercised in an arbitrary, unpredictable, or discriminatory manner."  *See* DoD Manual 5200.08, vol. 3, § 1.2(a) (Sept. 18, 2020) [hereinafter Defense Manual].  The Defense Manual requires installations to "clearly and conspicuously post[]" at their Visitor Control Centers ("VCCs") all "[c]redential requirements, fitness disqualifications, . . . and redress and appeal processes."  *Id.* § 2.4(d)(3).  With respect to adverse fitness determinations for "unescorted access" to the installation, "[i]nstallation commanders must conspicuously post their established adjudication criteria and redress and appeal process for those negatively adjudicated."  *Id.* § 3.3(c)(3).  The Defense Manual applies to DoD "installations located within the United States" and permits the heads of DoD Components to "extend applicability to installations in foreign countries if permitted by applicable host-nation agreements, status of force agreements, or other requirements."  *Id.* § 1.1(a)(3).

Army in Europe and Africa Regulation 190-16 ("AEA") covers "access control policy and procedures for U.S. Forces installations in the United States European Command (USEUCOM) area of responsibility."  Army in Europe and Africa Regulation 190-16 at 1 (Apr. 12, 2024) [hereinafter AEA].  The AEA requires Access Control Point guards who deny access to individuals seeking admission to "[p]rovide the access denial redress form (AEA Form 190-16G) if the individual questions why access is denied."  AEA § 34(j)(6).  The AEA Form 190-16G is also required to be provided to "[i]ndividuals who want to 'redress' . . . their access denial due to their

2

placement on the [USEUCOM] Watchlist." *Id.* App. G-4. And individuals who want to "redress" debarment from the Installation Access Control System "must contact the barring authority, normally the area commander." *Id.* App. F-4. The AEA recognizes that the Defense Manual policies "apply to all DOD installations located in the United States" and states that the AEA "meets the intent of the [Defense Manual] and corresponding Service regulations for access to U.S. Forces installations located outside the continental United States." *Id.* § 4(b).

Finally, DoD Instruction 5200.46 ("Defense Instruction") sets forth standards and procedures relevant to Civilian Access Cards ("CACs"). The Defense Instruction provides that, "[i]f a DoD Component or [the Defense Office of Hearings and Appeals] proposes to deny or revoke a CAC" under certain conditions, the relevant body "must issue the individual a written statement (also known as a letter of denial (LOD) or revocation (LOR)) identifying the disqualifying condition(s)." DoD Instruction 5200.46 § 4(a) (Sept. 9, 2014) [hereinafter Defense Instruction]. It goes on to detail what is required to be included in the LOD or LOR and permits the individual whose CAC revocation is being adjudicated to respond within 30 days from the LOD or LOR. *Id.* § 4(b). The Defense Instruction also describes the appeal process available to "[i]ndividuals who have been denied a CAC or have had a CAC revoked due to an unfavorable credentialing determination." *Id.* § 6(a).

### B.    Factual Background and Procedural History

Plaintiff is a U.S. citizen and spouse of an active duty servicemember stationed at a United States Army installation in Wiesbaden, Germany. Second Am. Compl., ECF No. 30 [hereinafter SAC] ¶ 8. Until August 2024, Plaintiff served as an IT defense contractor at that same installation. *Id.* The position, credentials, and benefits associated with that role were equivalent to those of a GS-12 federal employee. *Id.* ¶ 13.

3

On August 6, 2024, Plaintiff was detained at his workplace by Military Police.  *Id.* ¶ 12 While in custody, Plaintiff was notified via an auto-generated email that his DoD sponsorship "ha[d] ended."  *Id.* ¶ 14.  This instantly disabled his access to military facilities and associated benefits.  *Id.* ¶¶ 14–15.  Plaintiff did not receive or observe any notice or opportunity for "redress." *Id.* ¶ 14.  Plaintiff was thereafter put on unpaid leave and eventually terminated from his position because the "client [had] revoked his access to the worksite."  *Id.* ¶ 15.

Upon learning of his sponsorship termination, Plaintiff went to the Wiesbaden VCC with his spouse to be signed in as her guest.  *Id.* ¶ 16.  But VCC denied him access because Plaintiff's passport had been "red-flagged."  *Id.*  VCC also notified Plaintiff that his CAC had been revoked, and Plaintiff accordingly surrendered his CAC.  *Id.*  Plaintiff again alleges that he did not receive or observe any written notice of reasons for denial of access or revocation of his CAC, or any mechanism by which he could seek redress despite his attempts to seek information regarding the denial.  *Id.* ¶¶ 16, 19; *see also* Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 34 [hereinafter Pl.'s Opp'n], at 11–12.

On October 2, 2024, the Army issued a memorandum barring Plaintiff from all United States military installations in Europe due to his "history of criminal misconduct."  SAC ¶ 17.  The memorandum, which also did not contain any reference to redress procedures, and a letter characterizing Plaintiff as a "potential insider threat" were disseminated through DoD systems.  *Id.* ¶¶ 17–18.  Plaintiff alleges that these descriptors have adversely impacted his ability to work as a defense contractor in Europe and to access DoD installations.  *Id.* ¶ 18.

Plaintiff brought the present action on March 17, 2025.  *See* Compl., ECF No. 1.  He alleges that Defendants failed to (1) "maintain/conspicuously post/provide the redress process," "furnish [AEA] Form 190-16G," or issue a "written redress decision" as required by the Defense Manual

and the AEA as to his installation-access denial and (2) "issue a CAC LOD/LOR, to allow a 30-day response, or to provide appeal rights" as required by the Defense Instruction as to his CAC revocation.   SAC ¶ 25; *see also id.* ¶¶ 3, 19–20, 30–31.   Those failures, Plaintiff asserts, are (1) final agency actions taken "without observance of procedure required by law" and are arbitrary and capricious in violation of the APA, *id.* ¶ 26, and (2) deprivations of Plaintiff's protected property and liberty interests in violation of the Due Process Clause of the Fifth Amendment, *id.* ¶¶ 29–30.   Plaintiff seeks, among other things, vacatur or remand of the adverse determinations and declaratory relief.   Plaintiff also seeks mandamus relief to compel Defendants to follow their own procedures.   *Id.* ¶¶ 27, 32, 37.

## III.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint "must contain sufficient factual mater, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   While a court must accept as true all factual allegations contained in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id*.   Indeed, courts need not accept as true legal conclusions that are couched as factual allegations.   *Id.*

Moreover, pro se complaints must be "liberally construed."   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *see also Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).   Pro se plaintiffs are held to "less stringent standards than those applicable to formal pleadings drafted by lawyers," and this liberal standard "extends to considering supplemental material filed by a pro se litigant in order to clarify the precise claims being urged—including facts set forth in a plaintiff's opposition to a motion to dismiss."   *Naz v.*

5

*Wright*, No. 23-5237, 2026 WL 1657113 at *3 (D.C. Cir. June 9, 2026) (cleaned up);

*see also Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

## IV.    DISCUSSION

### A.    APA

Plaintiff asserts that Defendants' failure to comply with the notice, redress, and appeal

procedures in the Defense Manual, AEA, and Defense Instruction is arbitrary and capricious and

action taken "without observance of procedure required by law" in violation of the APA.

SAC ¶¶ 22–27 (citing 5 U.S.C. § 706(2)(A)–(D)).    Defendants do not claim that they in fact

provided the notice or process that Plaintiff alleges DoD policy mandates.    Rather, Defendants

argue that Plaintiff fails to allege sufficient facts to establish that any of the internal procedures on

which he relies imposed any affirmative obligation on Defendants.    The court disagrees and denies

Defendants' motion as to this claim.

Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law" or that is "without

observance of procedure required by law."    5 U.S.C. § 706(2)(A)–(D).    And "[i]t is axiomatic . . .

that an agency is bound by its own regulations."    *Nat'l Env't Dev. Ass'n's Clean Air Project v.*

*EPA* (*NEDA*), 752 F.3d 999, 1009 (D.C. Cir. 2014) (cleaned up).    "Thus, an agency action may be

set aside as arbitrary and capricious if the agency fails to comply with its own regulations."    *Id.*

(internal quotation marks omitted); *see also Safari Club Int'l v. Zinke*, 878 F.3d 316, 325 (D.C. Cir.

2017) (holding that the arbitrary-and-capricious test also governs whether the agency acted without

observance of procedure under § 706(2)(D)).[2]

---

[2] To the extent Defendants argue at the threshold that Plaintiff "fails to identify any discrete, reviewable final action," the court disagrees.  *See* Defs.' Mot. to Dismiss, ECF No. 32 [hereinafter Defs.' Mot.], Defs.' Mem. in Supp. of Defs.' Mot., ECF No. 32-1 [hereinafter Defs.' Mem.], at 5.  Save one fleeting mention of such an argument, *see id.*, Defendants do not otherwise explain why the actions Plaintiff identifies—sponsorship termination, theater-wide

*First*, Defendants aver that neither the Defense Manual nor the AEA "impos[es] affirmative obligations on the Government."  Defs.' Mot. to Dismiss, ECF No. 32 [hereinafter Defs.' Mot.], Defs.' Mem. in Supp. of Defs.' Mot., ECF No. 32-1 [hereinafter Defs.' Mem.], at 6.  Specifically, Defendants insist that (1) the AEA does not adopt the Defense Manual and therefore any Defense Manual requirements did not apply to Plaintiff and (2) Defendants were not required to provide Plaintiff with AEA Form 190-16G because Plaintiff did not "question[] why access [was] denied." *Id.* at 6–7.

To start, Defendants have not satisfactorily demonstrated, at this stage, that the AEA does not adopt the Defense Manual's requirements to post notice of the redress and appeal processes for adverse fitness determinations.  The AEA states that it "meets the intent of the [Defense Manual] and corresponding Service regulations for access to U.S. Forces installations located outside the continental United States."  *See* AEA § 4(b).  To be sure, that language does not affirmatively state that the AEA adopts the Defense Manual's notice requirements, but it does not disavow them either.  Defendants cite to no other portion of the AEA or any other policy that would establish their inapplicability.  Further, Plaintiff pleads factual allegations beyond mere "arguments about the legal conclusion to be drawn about the agency action" that Defendants were required by the Defense Manual to provide certain procedures.  *See Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); *see, e.g.*, SAC ¶¶ 14–16.  Because "summary judgment is ordinarily the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard

---

debarment, and CAC revocation—are not final agency actions.  Agency action is final when it "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks and citations omitted).  Defendants do not identify any additional agency actions to establish finality. Nor do they dispute that "legal consequences to Plaintiff's government-conferred statuses . . . family co-residency, and occupation" flowed from these actions.  *See* SAC ¶ 21.

of review," *R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric.*, 130 F. Supp. 3d 356, 369 (D.D.C. 2015) (cleaned up), the court declines to dismiss Plaintiff's APA claim as to the applicability of the Defense Manual.

As to whether Defendants were required by the AEA to furnish Plaintiff with an AEA Form 190-16G, Defendants' argument that "Plaintiff alleges nowhere in his [SAC] that he questioned his access denial" may be accurate but is ultimately without merit. *See* Defs.' Mem. at 7. Plaintiff's opposition brief closes any gaps in his pleading. The brief states that Plaintiff "sought information regarding [his] denial," was "unable to obtain any explanation from security personnel regarding the basis [of] [his] denial," and was ultimately deprived of the applicable redress and appeal process. Pl.'s Opp'n at 11–12; *see also* SAC ¶¶ 24–25. In light of the liberal standard applicable to a pro se plaintiff's pleadings, including any opposition to a motion to dismiss, *see Naz*, 2026 WL 1657113 at *3, the court finds that it is plausible that Plaintiff "question[ed] why [his] access [was] denied," thereby triggering Defendants' affirmative obligation to provide him with an AEA Form 190-16G. *See* AEA § 34(j)(6).

*Second*, Defendants' argument as to their obligations under the Defense Instruction is likewise unavailing. Plaintiff alleges that Defendants failed to provide him with a written letter detailing the reasons for his CAC revocation, a subsequent opportunity for him to respond, and an avenue for appeal as required by the Defense Instruction. SAC ¶ 25. But Defendants maintain that they were exempted from doing so, because the Defense Instruction does not require the typical notice and appeal procedures for individuals "found unsuitable for competitive civil service consistent with 5 CFR part 731 . . . or [those] disqualified from appointment in the excepted service or from working on a contract." Defense Instruction § 3(b); *see also* Defs.' Mem. at 7–8. Defendants appear to argue that, because "Plaintiff's [CAC] revocation started with his employer,"

Plaintiff was "disqualified from working on a contract" and therefore the Defense Instruction did not require Defendants to provide Plaintiff with anything more. Defs.' Mem. at 7–8. At least on the pleadings, the court is unpersuaded. Plaintiff sufficiently alleges that his CAC was revoked by VCC personnel without notice or opportunity for redress and that his employer took adverse action only *after* his credentials were terminated. SAC ¶ 16; Pl.'s Opp'n at 16. Without the administrative record, the court is unable to determine the events surrounding Plaintiff's CAC revocation. The absence of the administrative record therefore counsels against dismissal. *See R.J. Reynolds Tobacco Co.*, 130 F. Supp. 3d at 369.

In sum, Plaintiff alleges sufficient facts to establish that Defendants did not provide him with the notice or opportunities to respond or appeal his access denial and CAC revocation as required by the Defense Manual, AEA, and Defense Instruction. Because Plaintiff plausibly establishes that Defendants' actions failed to comply with their own regulations and were therefore arbitrary and capricious, the court denies Defendants' motion as to Plaintiff's APA claim. *See* 5 U.S.C. § 706(2)(A)–(D); *NEDA*, 752 F.3d at 1009.

## B.    Due Process

Plaintiff also maintains that Defendants' adverse actions violate his Due Process rights under the Fifth Amendment. He alleges that Defendants unlawfully deprived him of protected property and liberty interests "without timely notice, reasons, or a meaningful opportunity to be heard, and without providing the posted redress process or [CAC] credentialing procedures." SAC ¶ 30. Defendants argue that Plaintiff fails to plausibly allege a cognizable property or liberty interest. Defs.' Mem. at 8. The court grants Defendants' motion as to Plaintiff's purported property interest but denies it as to his liberty interest.

9

The Due Process Clause "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Protected property interests come from an independent source of law beyond the Constitution. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). And protected liberty interests encompass rights that are "essential to the orderly pursuit of happiness by free men," including one's ability to pursue their desired occupation. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

Plaintiff claims a property interest in "specific government-conferred statuses and entitlements" such as CAC eligibility, medical privileges, and housing eligibility that were tied to his employment with the Army. SAC ¶ 29. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotation marks omitted). Moreover, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462–63 (1989)). Plaintiff fails to plead sufficient facts plausibly establishing that his claimed entitlement to benefits rises above the level of mere unilateral expectation. Plaintiff alleges that his property interest is "reflected in his [Letter of Identification]." SAC ¶ 29. But the court agrees with Defendants that the letter conveys no such interest; in fact, it expressly disclaims any concrete guarantee of benefits. *See* Defs.' Mem. at 8. The Letter of Identification explicitly states that benefits are only available pursuant to the "*discretion* of local command policy." Defs.' Mot., Ex. B, ECF No. 32-3 (emphasis added). Plaintiff's alleged entitlements therefore fall short of the requirement that property interests be non-discretionary and clearly "defined by existing rules or understandings [stemming] from an

10

independent source [of law]."  *See Roth*, 408 U.S. at 577; *Castle Rock*, 545 U.S. at 756.  Even construing all factual allegations in his favor, Plaintiff fails to allege a legally cognizable property interest.

On the other hand, Plaintiff sufficiently pleads a liberty interest in "pursuing his occupation free from government stigmatization."  SAC ¶ 29.  In the context of adverse employment action by the government, a plaintiff must show that the action imposes not only stigma, but also some serious "change in his status under law," such as that "the government has seriously affected, if not destroyed, his ability to obtain employment in [his] field."  *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995) (alteration in original) (internal quotation marks omitted).  Plaintiff pleads that the stigma from being labeled with a "history of criminal misconduct" and as a "potential insider threat," combined with his "Europe-wide exclusion," is functionally a "de facto debarment [that] materially impair[s] his occupation in defense contracting."  SAC ¶ 30.  That allegation, taken as true, is enough to survive a motion to dismiss.

Contrary to Defendants' assertion, Plaintiff's failure to plead specific attempts at obtaining post-debarment defense contracting employment or any facts to suggest public dissemination of the "insider threat" label is not fatal.  *See* Defs.' Mem. at 9–10.  Courts do not demand perfection from pro se plaintiffs.  *See Erickson*, 551 U.S. at 94; *Naz*, 2026 WL 1657113 at *3. And Defendants' further arguments that "Plaintiff is not blocked from future employment in defense contracting" or that his "overall right to work is not affected by Defendants' actions" are better suited for resolution with a more fulsome factual record.  *See* Defs.' Mem. at 9.  The court agrees with Plaintiff that determinations regarding the dissemination of the allegedly stigmatizing information and the extent of the stigma are inappropriate for resolution at this early stage. *See* Pl.'s Opp'n at 21.  Construed liberally, Plaintiff's complaint plausibly states a liberty interest.

11

### C.      Mandamus

Finally, the court grants Defendants' motion with respect to Plaintiff's mandamus claim. Mandamus is a drastic remedy that can only be invoked under extraordinary circumstances as "an option of last resort." *Process & Indus. Devs. Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 582 (D.C. Cir. 2020). To show entitlement to mandamus relief, a plaintiff must demonstrate "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that *no adequate alternative remedy exists*." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (emphasis added). Plaintiff has an alternative remedy here in the APA, *see supra* Section IV.A, so his mandamus claim is dismissed. *See Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005); *see, e.g.*, *Jafarzadeh v. Duke*, 270 F. Supp. 3d. 296, 311 (D.D.C. 2017).

### V.      CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 32, is granted as to Count III but denied as to Counts I, II, and V. As to Plaintiff's surviving APA and Due Process claims, the parties shall meet and confer and by July 14, 2026, file a Joint Status Report proposing a schedule for further proceedings.

Dated:  June 30, 2026

Amit P. Mehta
United States District Judge

12